**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 09-366-DLB**

**JOANNE ROBINSON**                                                                                    **PLAINTIFF**

vs.                               **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joanne Robinson filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments on January 5, 2007. (Tr. 97-105). At the time of filling, Plaintiff was 45 years old and alleged a disability onset date of July 7, 2006. (Tr. 97). She asserts she is disabled due to chronic bronchitis, gastroesophageal reflux disease, vocal cord dysfunction, depression and chronic low back pain. (Tr. 139, 231). Her applications were denied initially and on reconsideration. (Tr. 45-53, 59-65). At Plaintiff's request, an administrative hearing was conducted on February 17, 2009 by Administrative Law Judge (ALJ) Roger L. Reynolds. (Tr. 18-44). On April 14, 2009, the ALJ ruled that

1

Plaintiff was not disabled and therefore not entitled to DIB or SSI benefits. (Tr. 9-17). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 18, 2009. (Tr. 1-3).

On November 16, 2009, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for review. (Docs. #9, 10).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.	The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 11). At Step 2, the ALJ determined Plaintiff's bronchitis, gastroesophageal reflux disease status post Nissen fundoplication, vocal chord dysfunction secondary to intraesophageal reflux, depression, chronic low back pain secondary to degenerative disc disease of the lumbar spine with "subtle" herniated nucleus pulposus at L5-S1 to be "severe" impairments within the meaning of the regulations. (Tr. 11-12). At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-14). Specifically, the ALJ found that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 12).

At Step 4, the ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of light and sedentary work:

3

that is, lifting, carrying, pushing or pulling up to twenty pounds occasionally, ten pounds frequently, with sitting, standing or walking up to six hours each in an eight hour day, but with no climbing of ropes, ladders or scaffolds; occasional climbing of stairs or ramps; no aerobic activities such as running, jumping or fast-paced assembly lines; no exposure to industrial hazards, concentrated vibration, dust, gases, smoke, fumes, poor ventilation, temperature extremes or excess humidity; occasional stooping, kneeling, crouching, crawling; requires entry level work with simple procedures, no frequent changes in work routines, no detailed or complex problem solving, independent planning or goal setting; should have only occasional interaction with the general public not involving prolonged conversation, dispute resolution, etc.; should not perform work requiring more than occasional speaking.

(Tr. 14). Based upon these findings, the ALJ concluded that Plaintiff's exertional and nonexertional limitations prevented her from performing her past work as a customer service representative, delivery van driver, and factory worker. (Tr. 15-16).

At Step 5, the ALJ considered Plaintiff's age (younger individual), education (high school), work experience, and RFC in conjunction with the Medical-Vocational Guidelines and testimony from a Vocational Expert and concluded that there exist a significant number of jobs in the national economy Plaintiff can perform despite her limitations, such as weighing/inspecting, and bench assembly. (Tr. 16-17). Consequently, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 17).

**C. Analysis**

Plaintiff's sole argument on appeal is that the ALJ erred when he accorded "little probative weight" to the opinions of Plaintiff's treating physicians, Dr. David Dubocq, a family practitioner, and Dr. Gary Patton, a psychiatrist. Both doctors submitted medical source statements which included restrictive assessments of Plaintiff's residual functional capacity.

"Generally, the opinions of treating physicians are given substantial, if not controlling,

4

deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  However, such opinions do not automatically bind the ALJ, as the opinions of treating physicians are only entitled to controlling weight when they are "supported by objective medical evidence," *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003), and are uncontradicted by substantial evidence, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).  If the ALJ finds that the treating physician's opinion fails to meet these two conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so.  *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 201 WL 3199693, at *6 (6th Cir. Aug. 12, 2010) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).  "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

In a letter dated March 4, 2008, Dr. Dubocq diagnosed Plaintiff with gastroesophageal reflux disease and chronic low back pain and stated that he has restricted Plaintiff "from lifting anything over 10 lbs., no bending, stooping, reaching above shoulder level, no prolonged sitting, standing or walking."  (Tr. 415).  In addition, he noted that Plaintiff "needs to change positions frequently due to the chronic nature of her pain, and she needs to recline several times a day."  (Tr. 415).  In the final paragraph of his letter, Dr. Dubocq states: "At this time, Ms. Robinson is unable to do work of any type in the competitive labor market, due to her condition."  (Tr. 415).  On March 17, 2008, Dr. Patton completed a medical source statement which assessed Plaintiff as having a fair ability to follow work rules, relate to co-workers, use judgment, and function independently; and a poor or nonexistent ability to deal with the public, interact with supervisors, deal with work

stresses, maintain attention/concentration, and maintain emotional stability. (Tr. 435-36). In addition, Dr. Patton opined that "due to mood instability, anxiety, impaired concentration and . . . the effects of multiple medications . . . [Plaintiff] is . . .disabled." (Tr. 436).

In his written decision, the ALJ accorded little weight to the opinions of Drs. Dubocq and Patton:[1]

> As for the opinion evidence, the attending physician statement by Dr. David Dubocq has been considered, but given little weight. His assessment is inconsistent with objective medical evidence of record and also the very limiting RFC is not supported by the doctor's treatment notes, and inconsistent with the claimant's activities of daily living, described above.

(Tr. 15). Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he failed to accord controlling weight to the opinions of Drs. Dubocq and Patton.

---

[1] Defendant acknowledges that the ALJ did not explicitly state that he was according little weight to Dr. Patton's assessment. To the extent that this omission does not comply with the "good reason requirement" contained in 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), such error is harmless. It is apparent from his decision that the ALJ accorded little weight to Dr. Patton's assessment of Plaintiff's nonexertional limitations, relying instead on the assessment of a consultative psychiatrist. (Tr. 15) ("The consultative psychiatrist . . . opined that the claimant did not have any evidence of psychosis , or deterioration in personal habits, and no impairment in her ability to relate."). In addition, the Court notes that Plaintiff does not contend in her Motion for Summary Judgment that the ALJ erred by failing to give good reasons for his rejection of Dr. Patton's opinions. Rather, Plaintiff only asserts that is was error for the ALJ not to afford Dr. Patton's opinion controlling weight.

The Sixth Circuit Court of Appeals has recognized that the good reason requirement does not require conformity at all times. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement–to ensure adequacy of review and to permit the claimant to understand the disposition of his case–eve though he failed to comply with the regulations terms." *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *4 (6th Cir. Aug. 12, 2010). Where, as here, the ALJ discusses the opinion of the treating physician and indirectly attacks the supportability of the conclusions contained therein by discussing–and according significant weight–contradictory medical evidence in the record, the goals of §§ 404.1527 and 416.927 are met even though the ALJ did not comply with the terms of those regulations. *Coldiron*, 2010 WL 3199693, at *5 ("The ALJ's discussion of other record evidence shows that [the treating physician's] opinion lacks the support and consistency required to compel controlling weight. We thus conclude that the ALJ 'met the goal of § 1527(d)(2)' . . . even if he did not 'compl[y] with the terms of the regulation.'" (quoting *Wilson*, 378 F.3d at 547)).

The Court disagrees.

Contrary to Plaintiff's assertions, the ALJ did not commit reversible error when he gave little credence to her physicians' opinions that she is "disabled" or is unable to perform "any type of work in the competitive labor market." (Tr. 415, 436). A treating physician's opinion is only entitled to deference when it is a *medical opinion*. *See* 20 C.F.R. § 404.1527(d), 416.927(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e), 416.927(e); Social Security Regulation 96-5p ("Medical sources often offer opinions about whether an individual . . . is "disabled" or "unable to work" . . . . Such opinion on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Consequently, the opinions that Plaintiff is "disable" or "unable to work" were properly discounted by the ALJ as opinions on an issue reserved to the Commissioner. *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531, at *5 (6th Cir. June 7, 2010).

The ALJ's rejection of Drs. Dubocq and Patton's restrictive assessments of Plaintiff's exertional and nonexertional limitations is supported by substantial evidence. As noted by the ALJ, the very limiting residual functional capacity assessments submitted by both doctors are not supported by the doctors' treatment notes. For example, even though Dr. Dubocq restricted Plaintiff from bending or lifting anything over 10 pounds, during 2008, Dr. Dubocq repeatedly recorded that Plaintiff's extremities had grossly normal strength and tone, and that although Plaintiff experienced some tenderness in her lower back, straight leg testing revealed weakness only in her left leg when extending her knee and flexing her

7

foot. (Tr. 425, 456, 459, 462, 466, 470). Likewise, Dr. Patton's restrictive assessment of Plaintiff's nonexertional limitations is inconsistent with treatment notes made by him on the same date. Although Dr. Patton assessed Plaintiff as having a poor to nonexistent ability to maintain attention/concentration and to maintain emotional stability, his treatment notes indicate that he considered her condition to be in "partial remission" and found her on that day to be alert, oriented, logical, goal-directed, and non-delusional, with fair insight, intact judgment, and normal memory. (Tr. 437-38).

In addition, as observed by the ALJ, the opinions of Drs. Dubocq and Patton are contradicted by the reports of state agency physicians Drs. Allen Dawson and Murray Gilman, and consultative psychiatrist Dr. Jack Eardley. (Tr. 12, 15). After reviewing the record, Drs. Dawson and Gilman agreed that Plaintiff's physical impairments did not even meet the threshold requirement of being "severe." (Tr. 258, 412). Similarly, and in contrast to Dr. Patton's assessment, Dr. Eardley found Plaintiff to have no impairment in her ability to relate to him, and noted no trophic changes or intellectual deterioration. (Tr. 273). All three of these medical source statements contradict the opinions of Drs. Dubocq and Patton and provide substantial evidentiary support for the ALJ's decision to accords their opinions little weight. *See Coldiron*, 2010 WL 3199693, at *6 ("When deciding if a physician's opinion is consistent with the record, the ALJ may consider evidence such as the claimant's credibility, whether or not the findings are supported by objective medical evidence, as well as the opinions of every other physician of record.").

In sum, because the restrictive assessments of Drs. Dubocq and Patton are neither supported by contemporaneous treatment notes, nor by the evidence in the record as a whole, the ALJ's decision to accord little weight to the opinions of Plaintiff's treating

physicians is supported by substantial evidence. *See Coldiron*, 2010 WL 3199693, at *7.

### III. CONCLUSION

The record contains substantial evidence supporting the ALJ's decision to accord little weight to the opinions of Drs. Dubocq and Patton, his determination of Plaintiff's RFC, and his ultimate finding that Plaintiff is not disabled. Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 7th day of September, 2010.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\5-09-366-RobinsonMOO.wpd